**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 28, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP603-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2013CM188

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JOHNNY RAY MARTIN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

¶1    GILL, J.[1]  Johnny Ray Martin appeals from a judgment of conviction entered following a jury trial and an order denying his motion for postconviction relief.  Martin argues that he is entitled to a new trial because

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

(1) the circuit court erroneously exercised its discretion by denying his attempt to impeach a witness with her prior recantation of a separate incident, and (2) his defense counsel was ineffective by failing to adequately investigate the recantation, prepare to address the recantation at trial, and argue the issue under the correct legal theory. We affirm.

## BACKGROUND

¶2    The State charged Martin with misdemeanor battery and disorderly conduct, alleging that he had physically assaulted Laura in 2013.[2] The case eventually proceeded to a jury trial.[3]

¶3    Following jury selection, defense counsel moved the circuit court for permission to ask Laura "whether or not" Laura had "filed any false police reports in the past" pursuant to WIS. STAT. § 904.04(1)(b). According to counsel, "a couple weeks" prior to the alleged incident at issue in this case, Laura called 911 and alleged that Martin "had pushed her down several times." After that incident, Laura wrote "a letter that indicated that she had made false statements to the police" and the State "brought forth charges of obstructing against" Laura. Counsel stated that neither she nor the State had any record of those charges, but Martin had informed counsel that "it is true and did occur." Counsel argued that the proposed question was proper because it went to Laura's "character … and the fact that she at some point… made an untruthful statement to law enforcement."

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the victim's name.

[3] Martin was charged in April 2013 but, upon being released on a signature bond, failed to appear in court for his initial appearance. The circuit court issued a bench warrant, and Martin did not return to court until 2020. His trial did not take place until April 2022.

The State objected to counsel's motion, stating that "[t]here is no proof that this happened."

¶4   The circuit court denied the motion.  Although the court found a paper record of a criminal case against Laura from 2010, which showed that she was charged with "obstructing," the court found that the facts underlying that charge were "not contemporaneous to these events" because that case occurred "three years before this allegation."  Moreover, the court stated that the paper record did not include a "probable cause section."  Additionally, the record demonstrated that the criminal charge against Laura was later amended to an ordinance violation, and she was ordered to pay costs and apologize "to the law enforcement officer."  The court stated that had the 2010 case resulted in a criminal conviction, it would have permitted defense counsel to ask Laura if she had ever been convicted of a crime, "but a county ordinance is not a crime."  The court further informed the parties that if the probable cause section of the 2010 charge were located, "we may reopen this."

¶5   Prior to defense counsel's cross-examination of Laura, the circuit court informed the parties that it had obtained the complaint from the 2010 charge against Laura.  The court characterized the contents of the complaint as detailing how Laura submitted a recantation letter relating to an allegation she had made against Martin.

¶6   The State again objected to defense counsel's motion seeking to impeach Laura with the 2010 charge, arguing that it was not relevant, either in time or substance, to the 2013 allegations against Martin and that the State did not have the opportunity to adequately prepare to address the evidence.  Defense counsel argued that the 2010 charge was relevant because it involved the "same

actors" and similar circumstances—Laura wanted Martin "out of the house, she was mad at him, and knew that he would be taken to jail if she made this report." Counsel further argued that while the 2010 charge did not end in a criminal conviction, "[i]t's a character trait. And the fact that she's used this methodology in the past is relevant." When asked by the circuit court why the 2010 charge was not brought to the State or the court's attention sooner, defense counsel stated that she did not see the record upon her investigation, but she did know from Martin "that there was some kind of an allegation like this." The State likewise confirmed that evidence of the 2010 charge was not available upon a records search.

¶7      The circuit court again denied defense counsel's motion. The court stated that the 2010 charge is "really other acts" evidence. Furthermore, the court found that the 2010 charge "is not per se character evidence" because "[t]here's no indication of recanting in this case," it occurred three years prior to the allegations in this case, and the evidence was a "surprise" to the State.

¶8      Martin was ultimately convicted on both counts. He filed a motion for postconviction relief, seeking a new trial, on two bases. First, Martin argued that the circuit court erroneously exercised its discretion by denying defense counsel's request to impeach Laura with the 2010 charge. Second, he asserted that counsel provided ineffective assistance by failing to adequately investigate the recantation, prepare to address the recantation at trial, and impeach Laura under the correct legal theory. Martin argued that cross-examination of Laura on the 2010 charge was permissible under WIS. STAT. §§ 904.04(1)(c) and 906.08(2), but the "court did not analyze the applicability of those statutes in its decision denying the motion" to impeach. Martin further contended that his defense counsel

"advanced the wrong legal theory of admissibility" by arguing that she could be permitted to cross-examine Laura under § 904.04(1)(b).

¶9 The circuit court held a ***Machner***[4] hearing to address the latter of the issues raised. During the hearing, the defense offered the criminal complaint from Laura's 2010 charge for obstructing an officer, the police report from the incident, and Laura's recantation letter. The letter stated, "I, [Laura], filed false police reports against [Martin] because he was cheating on me. Therefore all the information in the police report is false and should be disregarded." Defense counsel testified that she did not include the 2010 charge in her motion to impeach Laura because she "hadn't anticipated" the clerk of court "finding the file," given that counsel and Martin were unable to locate any actual evidence of the charge through various investigative means, including checking with the clerk of court and searching for Laura's name through Wisconsin's Consolidated Court Automation Programs (CCAP).[5]

¶10 The circuit court denied Martin's postconviction motion. The court stated that even if it had analyzed the admissibility of the evidence under WIS. STAT. § 906.08(2), through WIS. STAT. § 904.04(1)(c), its conclusion would not have changed because the 2010 charge was too "remote in time" to properly be admitted through cross-examination. *See* § 906.08(2). Further, the court assumed, without deciding, that defense counsel performed deficiently. However, the court

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] CCAP "is a case management system provided by [the] Wisconsin Circuit Court Access program." ***State v. Bonds***, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133. CCAP "provides public access online to reports of activity in Wisconsin circuit courts." ***Id.***

determined that the "evidence from trial support[ed]" the verdicts and that there was not a "reasonable likelihood of a different outcome on a retrial."

¶11    Martin now appeals, raising the same issues addressed in his motion for postconviction relief.

## DISCUSSION

### I.  Specific instances of conduct

¶12    We will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion. *State v. Jackson*, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791.  "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *Id.* (citation omitted).  A reviewing court may search the record for reasons to sustain a circuit court's exercise of discretion. *State v. LaCount*, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780.

¶13    Martin does not challenge the circuit court's decision denying defense counsel's motion to impeach Laura under WIS. STAT. § 904.04(1)(b).  On appeal, Martin states that it is "unclear how" that section is applicable to the impeachment issue.[6]    Martin instead faults the court for failing to consider § 904.04(1)(c), which was not raised by either defense counsel or the State. Martin further argues that he was not required to present the 2010 charge prior to trial because, as dictated by WIS. STAT. § 906.08(2), he was not permitted to

---

[6] Martin has therefore abandoned any argument regarding the applicability of WIS. STAT. § 904.04(1)(b).  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

introduce extrinsic evidence to impeach Laura. *See also* WIS. STAT. § 971.23(2m)(c). Moreover, according to Martin, no local rules or scheduling order required the filing of a pretrial motion to impeach Laura with the 2010 charge.

¶14 Because there appears to be some overlap in analysis under WIS. STAT. § 904.04(1)(b) and (1)(c)—and because the circuit court and the parties each had opportunities to address the latter in postconviction proceedings—we will consider whether the court erroneously exercised its discretion by denying defense counsel's motion to impeach Laura under § 904.04(1)(c).

¶15 WISCONSIN STAT. § 904.04(1) states that "[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except" in limited circumstances listed in the statute. Under § 904.04(1)(c), "[e]vidence of the character of a witness, as provided in" WIS. STAT. § 906.08, is admissible. In turn, § 906.08(2) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime or an adjudication of delinquency as provided in [WIS. STAT. §] 906.09, may not be proved by extrinsic evidence. They may, however, subject to [WIS. STAT. §] 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

¶16 While extrinsic evidence is not permitted under WIS. STAT. § 906.08(2), the statute "does not preclude the impeaching party from confronting the witness with a prior statement or document … referring to the specific instance in an attempt to get the witness to 'back down' and admit the impeaching fact."

7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 608.2 (4th ed. 2024). "If the witness finally relents and admits the fact, it is proven through the witness's testimony, not 'extrinsic' evidence." *Id.* The specific incidents "need not have resulted in criminal charges or convictions" to be admissible under the statute. *Id.* However, § 906.08(2) "bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act." *See* S. Ct. ORDER 16-02A, 2017 WI 92, § 6 (discussing FED. R. EVID. 608, which is "instructive" to interpreting § 906.08(2)).

¶17 Proper considerations when addressing whether to permit impeachment regarding a specific instance under WIS. STAT. § 906.08(2) include: whether the witness's prior statement "involved similar subject matter"; "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; "whether the lie was about a matter that was significant"; "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible." *See* BLINKA, *supra*, at § 608.2 (quoting *United States v. Cedeno*, 644 F.3d 79, 82-83 (2nd Cir. 2011)). In addition, relevant evidence under § 906.08(2) may be excluded pursuant to the considerations listed in WIS. STAT. § 904.03 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). BLINKA, *supra*, at § 608.2.

¶18 Martin is correct that the 2010 charge and the allegations in this case appear to have *some* similarity; both involved Laura making accusations against

Martin. However, contrary to Martin's postconviction assertion, the documents related to the 2010 charge do not specify what Laura accused Martin of doing. Additionally, the documents do not demonstrate whether Martin was charged in relation to Laura's accusation and, if so, what he was charged with. Rather, the documents merely state that Laura filed a "false police report" that may have resulted in "bail jumping charges against Martin." Thus, it is unclear whether the 2010 charge involved similar subject matter. *See Cedeno*, 644 F.3d at 82.

¶19 Regardless, the circuit court stated that the 2010 charge was "not contemporaneous to these events" because that case occurred "three years before this allegation." As outlined above, WIS. STAT. § 906.08(2) specifically authorizes a circuit court to prohibit an inquiry on cross-examination into specific instances of the conduct of a witness for the purposes of attacking the witness's character for truthfulness if those instances are too "remote in time." Here, the 2010 charge occurred 3 years before the allegations in this case and 12 years before the trial. Even if we were to limit the remoteness inquiry to the three-year period, the court did not erroneously exercise its discretion in determining that the evidence was too remote in time. *See State v. Sonnenberg*, 117 Wis. 2d 159, 170, 344 N.W.2d 95 (1984) (concluding that a previous incident—which occurred over one year prior to the underlying incident at trial—was "[c]ertainly" remote in time under § 906.08(2)); *State v. Missouri*, 2006 WI App 74, ¶¶5-8, 21-22, 291 Wis. 2d 466, 714 N.W.2d 595 (concluding that two previous incidents—which occurred approximately six months and approximately one week, respectively, before the underlying incident at trial—were not remote in time under § 906.08(2)). Thus, even if the 2010 charge was, to some degree, "probative of" Laura's

"untruthfulness,"[7] the court reasonably denied any inquiry into the incident on cross-examination, given the remoteness in time. *See* § 906.08(2).

¶20    Accordingly, the circuit court did not erroneously exercise its discretion by denying defense counsel's motion to impeach Laura with the 2010 charge under WIS. STAT. §§ 904.04(1)(c) and 906.08(2).

## II. Ineffective assistance of counsel

¶21    Martin next argues that the circuit court erred by concluding that his defense counsel did not provide ineffective assistance. According to Martin, defense counsel "could have conducted additional and more effective investigation" leading up to trial and argued for impeachment under WIS. STAT. §§ 904.04(1)(c) and 906.08(2).

¶22    To demonstrate that counsel was ineffective, a defendant must prove both that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

---

[7] As the State notes on appeal, victim recantations "happen[] with some level of frequency in domestic violence cases for a variety of reasons." For this reason, we question whether recantation evidence is automatically probative of a witness's untruthfulness under these or similar circumstances, as Martin seems to suggest on appeal. *See State v. McCallum*, 208 Wis. 2d 463, 473-74, 476-77, 561 N.W.2d 707 (1997) (discussing the corroboration requirement for establishing newly discovered evidence based on a victim's recantation and stating that "[r]ecantations are inherently unreliable"). Regardless, the circuit court did not address this issue.

probability sufficient to undermine confidence in the outcome.'" *Id.*, ¶39 (citation omitted). "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." *Id.*, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.*

¶23 As we have explained, the circuit court did not erroneously exercise its discretion by prohibiting defense counsel from impeaching Laura with the 2010 charge. The court's decision would not have changed had defense counsel conducted additional and more effective investigation into the 2010 charge, or argued for admissibility of the evidence under WIS. STAT. § 906.08(2). Indeed, even if counsel had located the paper file from that case, extrinsic evidence cannot be admitted under § 906.08(2). The court denied defense counsel's motion based, in large part, on the 2010 charge's remoteness in time. Thus, even assuming that defense counsel performed deficiently, that deficiency did not prejudice Martin's defense because the impeachment inquiry would have been inadmissible regardless. *See State v. Carter*, 2010 WI 40, ¶¶38, 53, 324 Wis. 2d 640, 782 N.W.2d 695.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.